# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MARSHA BROWNE,

    Plaintiff,

    v.

SHAUN DONOVAN, SECRETARY, U.S. DEPT. OF HOUSING AND URBAN DEVELOPMENT

    Defendant.

Civil Action No. 12-696 (CKK)

## MEMORANDUM OPINION
(February 4, 2014)

Plaintiff Marsha Browne brings this action against Defendant Shaun Donovan, in his official capacity as Secretary of Housing and Urban Development, alleging violations of Title VII of the Civil Rights Act of 1964. Presently before the Court is Defendant's [24] Motion to Dismiss and for Summary Judgment. Upon consideration of the pleadings[1], the relevant legal authorities, and the record as a whole, the Court GRANTS IN PART and DENIES IN PART Defendant's [24] Motion to Dismiss and for Summary Judgment. Specifically, the Court GRANTS Defendant's Motion with respect to Plaintiff's claim of hostile work environment, as well as Plaintiff's claims that the failure to detail and the failure to promote her were based on race, sex, or age discrimination. However, the Court DENIES Defendant's Motion with respect

---

[1] Complaint, ECF No. [1] ("Compl."); Def.'s Mot. to Dismiss and for Summ. J., ECF No. [24] ("Def.'s Mot."); Def.'s Stmt. of Material Facts as to Which There is No Genuine Issue, ECF No. [24] ("Def.'s Stmt."); Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J., ECF No. [24] ("Def.'s Mem."); Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. for Summ. J., ECF No. [35] ("Pl.'s Opp'n"); Pl.'s Resp. to Def.'s Stmt. of Material Facts as to Which There is No Genuine Issue, ECF No. [35-1] ("Pl.'s Stmt."); Def.'s Mem. in Reply and in Supp. of Mot. to Dismiss and for Summ. J., ECF No. [38] ("Def.'s Reply"); Def.'s Reply in Resp. to Pl.'s Stmt. of Material Facts, ECF No. [38-1] ("Def.'s Reply Stmt.").

1

to Plaintiff's claims that the failure to detail and the failure to promote her constituted retaliatory action in violation of Title VII.

## I. BACKGROUND

### A. Factual Background

Plaintiff Marsha Browne is an African-American female born in 1948 who has worked within the Office of Ethics and Personnel Law ("OEPL"), in the Office of General Counsel ("OGC") at the U.S. Department of Housing and Urban Development ("HUD") in Washington, D.C. since 1998. Compl. ¶¶ 2-3. The OEPL has two divisions: the Personnel Law Division ("PLD") and the Ethics Law Division. Def.'s Ex. 2 (OGC Organizational Chart) at 1. Plaintiff has served as the Assistant General Counsel for PLD, a GS-15 position, since 2001. Compl. ¶ 1; Def.'s Ex. 1 (Browne Deposition) at 30:3-9. Since 2007, Plaintiff's second-line supervisor in this position has been Linda Cruciani, the Deputy General Counsel of Operations in OGC. Pl.'s Ex. 1 (Cruciani Affidavit) ¶ 4.

On or about the week of August 17, 2009, Plaintiff accompanied her first-level supervisor Paula Lincoln, the then-Associate General Counsel for OEPL and an African-American female, to a meeting with Nestor Davidson, the then-Principal Deputy General Counsel for HUD. Pl.'s Ex. 8 (Browne Affidavit) ¶ 38. Plaintiff alleges that at this meeting she informed Davidson of her belief that Linda Cruciani was undermining her on the basis of her race. *Id.* Defendant disputes whether Plaintiff complained of racial discrimination by Cruciani in this meeting, but nevertheless concedes that Plaintiff's statements to Davidson constitute protected activity under Title VII's anti-retaliation provisions. Def.'s Reply Stmt. ¶ 88.

Subsequently, in November 2009, Lincoln informed OGC management that she was leaving her position and would be joining another department within HUD. Def.'s Ex. 3

(Cruciani E-mail); Def.'s Ex. 4 (Lincoln Deposition) at 11:5-7. Lincoln's departure left the position of Associate General Counsel for OEPL vacant. Upon Lincoln's departure, Cruciani recommended to HUD General Counsel Helen Kanovsky that the HUD Regional Counsel for Region I, Miniard Culpepper, and the HUD Regional Counsel for Region V, Courtney Minor, be detailed in succession as Acting Associate General Counsel for OEPL while OGC advertised for a permanent replacement. Def.'s Ex. 6 (Cruciani Affidavit) ¶ 52; Compl. ¶ 71. Culpepper and Minor are both African-American males, ages 59 and 55 respectively. Def.'s Ex. 8 (Table of HUD Employees' Age, Gender, and Race) at 1 and 3. Neither Culpepper nor Minor received additional pay or benefits for serving in the detail. Def.'s Ex. 11 (Personnel Form Detailing Minor), Def.'s Ex. 12 (Personnel Form Detailing Culpepper).

Upon learning from Cruciani that Culpepper and Minor would be detailed into the position, Plaintiff informed Cruciani that she wanted an opportunity to act in the position. Pl.'s Ex. 8 ¶ 67. Cruciani responded that Plaintiff had already had the opportunity to function as Acting Associate General Counsel during periods when Lincoln and Sam Hutchinson (Lincoln's predecessor), were out of the office. *Id.* Cruciani also stated that Plaintiff could apply for a permanent appointment to the vacant position. *Id.* Immediately following her meeting with Cruciani, Plaintiff met with Kanovsky to inform her that she wanted to act in the Associate General Counsel position. *Id.* ¶ 68. Plaintiff followed up with a memorandum to Kanovsky explaining her position and stating her view that if Culpepper and Minor had been detailed into the Acting Associate General Counsel position in order to provide either of them an advantage in applying for the permanent position, such action would constitute a prohibited personnel practice. Pl.'s Ex. 11 (Browne Memorandum). Kanovsky subsequently testified that, following

3

her conversation with Plaintiff in November 2009, she believed that Plaintiff would sue HUD if she was not detailed to the OEPL position. Pl.'s Ex. 9 (Kanovsky Deposition) at 103:11-22.

Kanovsky stated in her deposition that she decided to bring Regional Counsel to HUD headquarters in order to facilitate greater understanding between headquarters and its regional offices. Def.'s Ex. 5 (Kanovsky Deposition) at 85-86. Cruciani stated that she decided to recommend Culpepper and Minor specifically for the detail because they were both Ethics Officials who supervised personnel, labor, and ethics legal work in their respective regions and they both had management experience. Def.'s Ex. 6 ¶ 56.

Plaintiff contests these rationales for selecting Culpepper and Minor for the detail, arguing that bringing Regional Counsel in to act as Acting Associate General Counsel is atypical. Rather, the typical practice, she contends, is to detail the next person in the chain of command into an open position, here, an Assistant General Counsel such as Plaintiff. Pl.'s Ex. 6 (Salamido Affidavit) ¶ 17. Further, Plaintiff points out that detailing Regional Counsel into the position as Acting Associate General Counsel resulted in the expenditure of over $30,000 in additional costs, given the costs for Culpepper and Minor's housing, travel, and per diem. Pl.'s Ex. 8 ¶ 75; Pl.'s Ex. 2 at 172:16-19. Defendant responds that although Culpepper and Minor were the first Regional Counsel in memory to be detailed, in the past two other Regional Counsels had turned down offers for details at headquarters. Def.'s Ex. 5 at 89:1-19. In questioning Defendant's stated rationale, Plaintiff also points out that Cruciani provided alternative reasons for the selection of Culpepper and Minor, and not Plaintiff, for the detail. Specifically, Cruciani stated that she could not detail Plaintiff into the position because of tension between Browne and another Assistant General Counsel in OEPL, Athena Jones. Pl.'s Ex. 1 ¶ 53. Ms. Jones has denied the existence of tension between her and Plaintiff. Pl.'s Ex. 14

(Jones Affidavit) ¶¶ 11, 16. Plaintiff further contests the stated rationale for detailing Culpepper and Minor by pointing to the fact that Kanovsky had asked Lincoln, the outgoing Associate General Counsel for any recommendations for the detail, and Lincoln had provided no recommendations. Pl.'s Ex. 2 at 81:17-25, 83.

HUD subsequently posted the vacancy announcement for the Associate General Counsel position, which indicated that applications would be accepted from December 14, 2009 until January 11, 2010. Def.'s Ex. 17 (Vacancy Announcement) at 1. Neither Culpepper nor Minor applied for the position. Def.'s Ex. 1 at 110:7-10. However, Plaintiff did apply. Pl.'s Ex. 8 ¶ 55. As part of the selection process, Cruciani asked three Senior Executive Service officials at HUD, Inez-Banks Dubose, David Enzel, and John Grant to serve on an Executive Review Board panel that would review the applications submitted for the position, rate the applicants pursuant to rating instructions provided by the Office of Executive Resources in HUD, and create a list of the best qualified persons to refer to OGC for interview and/or selection. Def.'s Stmt. ¶ 23. According to the panel's rating and ranking worksheets of employee qualifications, Plaintiff was tied for the fourth highest applicant for the position, with a score of 23. Def.'s Ex. 19 (Rating and Ranking Workseet) at 1. Peter Constantine, the applicant eventually selected for the position, scored the second highest, with a score of 26. *Id.* Accordingly, Plaintiff and Constantine, along with five other applicants, were included on the Best Qualified List ("BQL") of candidates created by the panel members that was forwarded to Cruciani and Davidson. Def.'s Stmt. ¶ 25.

On or about February 23, 2010, apparently during the time when Plaintiff was being considered for the vacant Associate General Counsel position, Plaintiff and a group of African-American OGC employees and two former Caucasian OGC employees met with then-HUD

Deputy Secretary Ron Sims to voice issues relating to Cruciani's management style.[2]  Pl.'s Ex. 8 ¶¶ 44, 47.  Plaintiff claims that in this meeting, these employees raised concerns of a hostile work environment, complaining of prohibited personnel practices, race discrimination, and retaliation by Cruciani.  *Id.* ¶¶ 47-50.  Defendant disputes whether issues of racial discrimination and hostile work environment were discussed during this meeting, but nevertheless concedes that Plaintiff's actions during this meeting constitute protected activity under Title VII's anti-retaliation provisions.  Def.'s Reply Stmt. ¶ 25.

In early March of 2010, Plaintiff was interviewed by Cruciani and Davidson for the Associate General Counsel position.  Pl.'s Ex. 8 ¶ 62.  After the interview, both informed her that they were impressed with her answers and that her interview had gone well.  Def.'s Stmt. ¶¶ 28-29.  Cruciani and Davidson subsequently met with Kanovsky to discuss the candidates for the position.  Pl.'s Ex. 12 (Cruciani Deposition) at 136:10-14. In this meeting, Cruciani and Davidson both recommended Constantine as their top choice for the position.  *Id.* at 141:19-142:6.  Cruciani stated that coming out of the interviews, Constantine was "far and away the person we believed to be the best candidate for the position."  *Id.* at 142:11-12.  Kanovsky subsequently interviewed Constantine for the position herself and in a memorandum dated March 18, 2010, *see* Def.'s Ex. 5 at 129:5:18, she recommended his selection for the vacancy to Sims, the selecting official for the position.  Def.'s Ex. 24 (Recommendation Memorandum). Cruciani, Davidson, and Kanovsky have stated that they decided to recommend Constantine as

---

[2] Neither party identifies in its briefs the specific dates on which Plaintiff's name was forwarded to Cruciani and Davidson as part of the BQL, the date on which Plaintiff was interviewed by Cruciani and Davidson, and the date on which Plaintiff's application was rejected.  Nevertheless, Plaintiff states in her EEO Affidavit that she was interviewed in early March 2010, *see* Pl.'s Ex. 8 ¶ 62, and since Defendant never contests that Plaintiff's concededly protected activity preceded her non-selection for the vacancy, *see* Def.'s Reply Stmt. ¶ 25, the Court does not devote any additional discussion to this issue.

the best qualified candidate for the position based on his extensive labor law experience, strong background in ethics law, and broad personnel experience. *Id.* Sims subsequently approved the selection and Mr. Constantine currently serves as Associate General Counsel, a position in which he functions as Plaintiff's supervisor. Def.'s Ex. 22 (Executive Selection Roster).

Plaintiff objected to her non-selection for the Associate General Counsel position, arguing that this action was retaliation for what Defendant concedes was protected activity. Pl.'s Ex. 8 ¶ 63. Plaintiff argues that she is objectively better qualified than Constantine, possessing stronger credentials for the Associate General Counsel position. *Id.* In addition, Plaintiff points to other evidence in the record that she alleges casts doubt on Defendant's explanation for her non-selection. For example, she cites Cruciani's statement in a deposition that Constantine was selected because he was a "lovely person" in contrast to Plaintiff, who Cruciani described as lacking "emotional intelligence." Pl.'s Ex. 12 at 158:19-159:17, 168:10. Plaintiff notes that she has consistently received excellent evaluations and has never been counseled, much less disciplined, for issues relating to her temperament. *Id.* at 163:22-164:11; Pl.'s Ex. 2 at 76:18-25. In contesting the reasons for Defendant's selection of Constantine, Plaintiff also points to the fact that Cruciani has lost her notes from the interview process and was unable to provide them during discovery, in spite of regulatory requirements requiring interviewers to maintain their notes for a set period of time. Pl.'s Ex. 12 at 136:19-137-19.

**B. Procedural Background**

Plaintiff filed suit in this Court on April 30, 2012, alleging various violations of Title VII. First, she alleged that she was subject to a hostile work environment. Compl. ¶¶ 105-07. Next, she alleged that her non-selection for the detail position was both retaliatory and constituted discrimination on the basis of Plaintiff's race and/or sex and/or age. *Id.* ¶ 108-09. Finally,

Plaintiff alleged that her non-selection for the Associate General Counsel position was both retaliatory and constituted discrimination on the basis of Plaintiff's race and/or sex and/or age. *Id.* ¶ 110-11. After the parties conducted discovery, Defendant filed his [24] Motion to Dismiss and for Summary Judgment, seeking to dismiss all of Plaintiff's claims.

## II. LEGAL STANDARD

Defendant's motion seeks dismissal for failure to state a claim, or in the alternative, summary judgment. Pursuant to Fed. R. Civ. P. 12(d), "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003). Here, both parties have presented matters outside of the pleadings in support of their positions. Accordingly, the Court will review Defendant's entire motion under the summary judgment standard, because "the [defendant's] motion[] [was] in the alternative for summary judgment and . . . the parties had the opportunity to submit and submitted materials in support and in opposition." *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1273 n. 5 (D.C. Cir. 1997) (determining that it would not be "unfair" to treat such a motion as one for summary judgment).

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id*. Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of her position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in her favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

## III. DISCUSSION

Defendant seeks to dismiss all of Plaintiff's claims. In her response to Defendant's motion, Plaintiff concedes her hostile work environment claim for purposes of this lawsuit. *See* Pl.'s Opp'n at 36 n. 9. In addition, Plaintiff has not responded to Defendant's argument that the failure to detail and the failure to promote her were the product of discrimination, either on the basis of age, race, or gender, and these claims are conceded as well. *See Hopkins v. Women's Div. Gen. Bd. of Global Ministries*, 284 F.Supp.2d 15, 25 (D.D.C. 2003), *aff'd*, 98 Fed. Appx. 8 (D.C. Cir. 2004). Defendant's motion is therefore granted with respect to these claims. The remainder of this opinion is devoted to the only claims the parties contest: Plaintiff's claims that the failure to detail and the failure to promote her were retaliatory in violation of Title VII.

### A. Retaliatory Non-Selection

With respect to the failure to promote claim, the Court concludes that genuine issues of material fact exist that preclude summary judgment. Pursuant to Title VII of the Civil Rights Act, it is unlawful for any employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also contains an anti-retaliation provision, which forbids employer actions that "discriminate against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a

charge, testified, assisted, or participated in" a Title VII proceeding or investigation. *Id.* § 2000e-3(a).

Retaliation claims based on circumstantial evidence, like the Plaintiff's, trigger the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). Under this framework, "a plaintiff must first establish a prima facie case of retaliation by showing (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." *Id.* "If the plaintiff establishes a prima facie case, the burden shifts to the employer to produce a legitimate, [non-retaliatory] reason for its actions." *Id.* (internal quotation marks omitted). If the employer proffers a non-retaliatory explanation for the conduct at issue, the burden-shifting framework "disappears," and the Court "looks to whether a reasonable jury could infer . . . retaliation from all the evidence, which includes not only the prima facie case but also the evidence the plaintiff offers to attack the employer's proffered explanation for its action and other evidence of retaliation." *Id.* (citation omitted).

Here, Defendant concedes that Plaintiff has presented a prima facie case for retaliation with respect to her non-selection. *See* Def.'s Reply at 2 ("defendant has never contested that plaintiff had previously engaged in protected activity, that her supervisors were aware of this, and that the non-selection constituted an adverse action."). Further, Defendant has presented a legitimate, non-retaliatory explanation for its failure to promote Plaintiff – that Constantine was the better qualified applicant for the Associate General Counsel position. Def.'s Mem. at 27. Accordingly, the question becomes "whether a reasonable jury could infer . . . retaliation from all the evidence." *Jones*, 557 F.3d at 677 (internal quotation marks omitted). Upon reviewing the record as a whole, the Court concludes that the evidence regarding Plaintiff's non-selection is

open to conflicting interpretations, and thus summary judgment must be denied as to Plaintiff's claim of retaliation in her non-selection for the Associate General Counsel position.

Plaintiff relies on a diverse set of evidence to attack Defendant's proffered non-retaliatory explanation. Principally, Plaintiff points to her allegedly superior qualifications for the position. For example, she notes that she possesses greater and deeper ethics experience than Constantine, and that the sort of experience she has is more relevant for the position. Pl.'s Opp'n at 22-27. In response, Defendant argues that to defeat a motion for summary judgment by pointing to relative qualifications, a plaintiff must show that she is "significantly better qualified" than the candidate chosen. *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006). To be sure, "a disparity in qualifications, *standing alone*, can support an inference of discrimination only when the qualifications gap is 'great enough to be inherently indicative of discrimination'—that is, when the plaintiff is 'markedly more qualified,' 'substantially more qualified,' or 'significantly better qualified' than the successful candidate." *Hamilton v. Geithner*, 666 F.3d 1344, 1352 (D.C. Cir. 2012) (quoting *Holcomb*, 433 F.3d at 897) (emphasis added). Here, reviewing the relative qualifications of Plaintiff and Constantine as set out in the record, the Court finds that a reasonable jury could conclude that Plaintiff is more qualified than Constantine, although likely not "substantially more qualified," *Holcomb*, 433 F.3d at 897 (internal citation omitted). *See, e.g.,* Def.'s Ex. 23 (Davidson Affidavit) at 3 ("While the Complainant possessed deeper experience in some areas, Mr. Constantine possessed broader experience and had more overall depth as a candidate."). However, this is not sufficient to grant Defendant's request for summary judgment. Because Plaintiff has presented additional evidence to rebut Defendant's stated, non-retaliatory reason for her non-selection, she need not show that she is "substantially more qualified" than Constantine in order to survive summary judgment. As the D.C. Circuit has

emphasized, "[o]ur task is to review the record taken as a whole, and plaintiffs are expressly *not* limited to comparing [their] qualifications against those of the successful applicant; [they] may seek to expose other flaws in the employer's explanation." *Hamilton*, 666 F.3d at 1352 (internal citations omitted).

Here, as in *Hamilton*, Plaintiff has pointed to additional evidence in the record from which a reasonable jury could conclude that Defendant's stated reason for Plaintiff's non-selection is pretextual, namely "procedural irregularities in a highly subjective selection process." *Id.* at 1352. Specifically, Plaintiff has pointed to Cruciani's statements that Plaintiff lacked emotional intelligence and that Constantine was chosen over Plaintiff because of the difference Cruciani perceived in their temperaments. Pl.'s Ex. 12 at 158:19-159:17, 168:10. The D.C. Circuit has repeatedly cautioned that subjective considerations such as temperament should be "treat[ed] . . . with caution on summary judgment." *Id.* at 1356. *See also Aka v. Washington Hosp. Center*, 156 F.3d 1284, 1298 (D.C. Cir. 1998) (*en banc*) (noting that "courts traditionally treat explanations that rely heavily on subjective considerations with caution" and that "an employer's heavy use of highly subjective criteria, such as interpersonal skills, could support an inference of discrimination") (internal quotation marks omitted). This is because "[s]ubjective criteria . . . lend themselves to . . . discriminatory abuse more readily than do objective criteria." *Harris v. Group Health Ass'n, Inc.*, 662 F.2d 869, 873 (D.C. Cir. 1981).

In addition, Plaintiff has pointed to procedural irregularities in the selection process, namely Cruciani's loss of her interview notes. Pl.'s Ex. 12 at 136:19-137-19. Cruciani and Davidson have both stated that they were extremely impressed by Constantine in his interview, and that he was the clear frontrunner for the position coming out of the interview process. However, the interview notes that could verify that this was their contemporaneous evaluation of

Constantine relative to Plaintiff have been lost. In *Hamilton*, the D.C. Circuit denied summary judgment in part because of the "absence of any contemporaneous documentation supporting" the defendant's stated rationale for plaintiff's non-selection. 666 F.3d at 1357. *See also Grosdidier v. Broadcasting Bd. of Governors, Chairman*, 709 F.3d 19, 27 (D.C. Cir. 2013) ("the missing notes could have provided a more complete picture of what transpired during the interview process, especially regarding the types of questions the panelists asked generally and of specific applicants and their focus on particular qualities of an applicant."). Here, too, the absence of important contemporaneous documentation further supports the denial of summary judgment.

Accordingly, viewing the record as a whole, and in the light most favorable to the non-moving party, as the Court must on a motion for summary judgment, the Court concludes that a genuine issue of material fact exists as to whether Defendant's stated rationale for Plaintiff's non-selection is pretextual, and thus a reasonable jury could conclude that Plaintiff was actually not selected in retaliation for her concededly protected activity. "Of course, after hearing live testimony, assessing witness credibility, and weighing the evidence, the jury might also conclude that" Defendant's stated rationale is legitimate, because, *inter alia*, Plaintiff was not actually more qualified than Constantine, Cruciani's statements regarding "emotional intelligence" were not masking a retaliatory motive, and Cruciani's loss of interview notes was innocuous. *Hamilton*, 666 F.3d at 1357. But, these are disputes for the jury and not this Court to resolve. Therefore, the Court will deny Defendant's motion for summary judgment as to this claim.

### B. Retaliatory Failure to Detail

Defendant argues that the Court should dismiss Plaintiff's claim that the failure to detail her was retaliatory for two reasons. First, Defendant argues that the failure to detail does not

constitute an adverse employment action for purposes of Title VII's anti-retaliation provision. Def.'s Mem. at 25-26. Second, Defendant contends that even if the failure to detail were an adverse employment action, Plaintiff has failed to show a genuine issue of material fact as to the reasons for Plaintiff's non-selection. *Id.* at 26. The Court rejects both of these arguments.

First, under the facts of this case, the failure to detail Plaintiff into the Associate General Counsel position constitutes an adverse employment action. The Supreme Court has held that the anti-retaliation provision "covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). "[T]hat means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* This standard "focus[es] on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position" and thus "screen[s] out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." *Id.* at 69-70.

Accordingly, the issue here is whether the failure to detail Plaintiff as an acting Associate General Counsel for the OEPL might dissuade a reasonable employee from making or supporting a charge of discrimination. *See Moneghan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010). Defendant argues that it would not, as (1) the detail provided no additional pay or benefits, and (2) the detail decision was not a factor in the eventual selection of the permanent Associate General Counsel for OEPL, given that the ultimate selectee for the permanent position had not served in the acting position. Def.'s Ex. 1 at 110:7-10; Def.'s Ex. 11; Def.'s Ex. 12. Plaintiff concedes that the detail offered no additional pay or benefits, *see* Pl.'s Opp'n at 32, but

argues that she – and other employees in her position – viewed the detail as a significant career-enhancing opportunity.

The Court agrees with Plaintiff that a reasonable employee could view an extended detail to the Acting Associate General Counsel here as a career-enhancing opportunity, and the failure to be offered such a detail might dissuade a reasonable employee from making or supporting a charge of discrimination. As an initial matter, the absence of a change in pay or benefits is not determinative on the issue of adverse employment action. *See Pardo-Kronemann v. Donovan*, 601 F.3d 599, 607 (D.C. Cir. 2010) ("transfers resulting in no decrease in pay may nonetheless be adverse"); *Stewart v. Ashcroft*, 352 F.3d 422, 427 (D.C. Cir. 2003) (concluding that jury could find adversity in failure to transfer plaintiff to position with same pay and benefits but involving greater supervisory duties and prospects for advancement). Furthermore, the detail here would have offered Plaintiff the opportunity to serve, for approximately two months, in the position of her first-line supervisor. Indeed, the men detailed to the position instead of Plaintiff *did* actually function as her supervisors during the period of the detail. Pl.'s Ex. 8, ¶¶ 77-80. Thus the detail represents not simply a temporary lateral transfer, but rather a temporary vertical transfer to a superior position. *See Stewart*, 352 F.3d at 427 ("[Plaintiff] was denied the opportunity to take over his supervisor's position. The failure to select [plaintiff] as Chief clearly had materially adverse consequences for his present and future employment opportunities. He was simply denied his supervisor's job."). Accordingly, Defendant's citations to *Brown v. Brody*, 199 F.3d 446, 455-56 (D.C. Cir. 1999) and *Dorns v. Geithner*, 692 F.Supp.2d 119, 132 (D.D.C. 2010) are unavailing, as these cases addressed the distinct question of when a *lateral* transfer constitutes an adverse employment action. Furthermore, the record contains evidence that not only Plaintiff, but other employees in OGC viewed the detail as an opportunity to improve the chances of being

selected for the Associate General Counsel position permanently. *See, e.g.,* Pl.'s Ex. 22 (Franklin Affidavit) ¶¶ 26, 28; Def.'s Ex. 34 (Jones Deposition) at 32:6-16. Accordingly, in light of the record in this case, Plaintiff's contention that the detail represented a career-enhancing opportunity rises above the level of mere speculation. *Cf. Brookens v. Solis*, 616 F.Supp.2d 81, 91 (D.D.C. 2010) (concluding that claims of lost opportunity associated with failure to detail were too speculative to find adverse employment action). In addition, it bears noting that the fact that the individuals detailed – Culpepper and Minor – were not actually selected is irrelevant. Since these men did not apply for the ultimate position, the Court cannot know whether the detail ultimately would have functioned as a career-enhancing opportunity, and thus their non-selection sheds little light on whether a reasonable employee in Plaintiff's position would have viewed it as such. Consequently, the Court finds that a reasonable employee in Plaintiff's position could view a temporary, but extended opportunity to serve in her supervisor's position here as a career-enhancing opportunity. More importantly, the loss of this opportunity could dissuade such a reasonable employee from making or supporting a charge of discrimination.

Having concluded that Plaintiff here suffered an adverse employment action under the standard for retaliation claims, the Court moves to the next stage of the retaliation analysis. As with Plaintiff's claim of non-selection, Defendant has set forth a legitimate, non-retaliatory reason for the failure to select Plaintiff for the detail. Def.'s Mem. at 26. Kanovsky decided to bring Regional Counsel to HUD headquarters in order to facilitate greater understanding between headquarters and regional offices and Cruciani recommend Culpepper and Minor specifically for the detail because they were both Ethics Officials who supervised personnel, labor, and ethics legal work in their respective regions and they both had management experience. *Id.* Consequently, "[a]t [this] stage, the only question is whether the employee's evidence creates a

material dispute on the ultimate issue of retaliation either directly by showing that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (internal quotation marks omitted).

Here, viewing the record as a whole, and in the light most favorable to the non-moving party, the Court finds that Plaintiff has put forth evidence from which a reasonable jury could conclude that Defendant's stated reason for passing Plaintiff over is unworthy of credence and Defendant was actually motivated by retaliatory considerations. In the Title VII context, employees may cast doubt on an employer's stated reason for an action by pointing to, *inter alia*, "changes and inconsistencies in the stated reasons for the adverse action." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 n. 3 (D.C. Cir. 2008). Here, Plaintiff has pointed to alternative reasons for the failure to detail that a jury could find are inconsistent with Defendant's stated rationale. Specifically, Cruciani's statement that Plaintiff was not selected for the detail because of personality conflicts between Plaintiff and Athena Jones could lead a jury to question Defendant's proffered reason for passing Plaintiff over for the detail. Def.'s Opp'n at 35. Plaintiff also points to the fact that Kanovsky asked Lincoln whether she recommended anyone to serve as her temporary replacement, a detail potentially inconsistent with Defendant's stated desire to bring regional counsel to HUD headquarters. *Id.* As Plaintiff argues, if greater understanding between headquarters and the regional office were actually the goal in filling the detail, there would be little reason for Kanovsky to seek a recommendation from Lincoln. *Id*. Furthermore, in rebutting an employer's stated rationale, a Plaintiff can point to the employer's "failure to follow established procedures or criteria." *Brady*, 520 F.3d at 495 n.3. Here, Plaintiff alleges that detailing regional counsel into positions was not the typical practice, and presents

evidence from other employees stating that such action was unusual. Pl.'s Mem. at 33-34. Defendant appears to concede that Culpepper and Minor were the only Regional Counsel to ever serve in an acting capacity. However, Defendant does state that two Regional Counsel had been offered details in the past, although they had declined these details. Def.'s Reply at 21. Viewed in the light most favorable to the Plaintiff, the fact that no Regional Counsel had ever before served in a detail prior to Minor and Culpepper could also lead a reasonable jury to question Defendant's stated rationale for passing over Plaintiff. Accordingly, after reviewing the record as a whole, the Court concludes that granting Defendant summary judgment on this claim would be inappropriate. The question of whether Defendant's stated rationale for denying Plaintiff the detail was legitimate should be left for the jury to consider "after hearing live testimony, assessing witness credibility, and weighing the evidence . . . ." *Hamilton*, 666 F.3d at 1356.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's [24] Motion to Dismiss and for Summary Judgment. Plaintiff's hostile work environment claims, as well as her claims of discrimination relating to the failure to detail and the failure to select her for the Associate General Counsel position are dismissed. However, Defendant's motion is denied with respect to Plaintiff's claims of retaliation. An appropriate Order accompanies this Memorandum Opinion.


Dated: February 4, 2014

                  _____/s/_____
                  COLLEEN KOLLAR-KOTELLY
                  United States District Judge